IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JAMES DARRELL BEARD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 1:22-cv-00019 |
| HICKMAN COUNTY GOVERNMENT, | ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant Hickman County Government's ("Hickman County") motion for summary judgment (Doc. No. 29), which is fully briefed. (*See* Doc. Nos. 34, 38). For the reasons discussed below, the motion will be **GRANTED** in part and **DENIED** in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff James Darrell Beard ("Beard") worked for Hickman County's Sheriff's Department from 2011 to June 2021. (Doc. No. 35 ¶¶ 1, 35). Hickman County has a Family and Medical Leave Act ("FMLA") policy under which it provides employees up to 12 weeks of unpaid leave each calendar year (January 1 through December 31). (*Id*. ¶ 3). Hickman County also has a "Leave Without Pay" policy, that allows for absence without pay up to a year, at its discretion. (Doc. No. 37 ¶ 4). Hickman County's finance department tracks employees' FMLA leave concurrently with any short-term disability benefits. (*Id*. ¶ 5).

Beard first requested FMLA leave in May 2018, when he began having complications with diabetes. (Doc. No. 35 ¶ 2). Beard used seven weeks of FMLA leave in 2018 and twelve weeks of FMLA leave in 2019. (*Id*. ¶¶ 8-14). Beard was out on leave for approximately seven weeks in 2020, (*id*. ¶¶ 15-16), and for the first twelve weeks of 2021. (Doc. No. 29-7 ¶ 12). On May 24,

2021, Beard went out on leave again because his left leg needed to be amputated. (Doc. No. 35 ¶¶ 22-23).

At the beginning of June 2021, the Hickman County finance department notified the Sheriff, Chief Deputy, and Lieutenants Levi Mobley and Mike Doddo (collectively the "Command Staff") that Beard was out of short-term disability and FMLA leave. (Doddo Deposition, Doc. No. 36-2 at 12:13-19, 13:15-17). The Command Staff then contacted the county attorney and decided to terminate Beard's employment. (*Id*. at 14:5-12; Doc. No. 35 ¶ 33). The county attorney drafted Beard's termination letter, dated June 9, 2021. (Doc. No. 35 ¶ 34). On June 24, 2021, the Sheriff and Lt. Mobley hand delivered the termination letter to Beard at his home. (Doc. No. 35 ¶ 35). When Beard asked if he was being fired, the Sheriff told him: "Well, maybe when you get a leg and learn how to walk again, you can come back." (*Id*. ¶¶ 36-37).

On June 8, 2022, Beard filed this action against Hickman County for alleged violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Tennessee Disability Act ("TDA"), T.C.A. § 8-50-103, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. (Doc. No. 1). On August 25, 2023, Hickman County filed the present motion for partial summary judgment.[1]

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence

---

[1] Hickman County does not move for summary judgment on Beard's discrimination or retaliation claims brought under the ADA.

of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

As an initial matter, summary judgment will be granted as to Beard's FMLA interference claim as unopposed. (*See* Doc. No. 34 at 22 n.6). The Court will now turn to Hickman County's remaining arguments for summary judgment.

### A. FMLA Retaliation and ADEA Discrimination

Hickman County moves for summary judgment on Beard's FMLA retaliation and ADEA discrimination claims on the basis that Beard cannot establish that its non-discriminatory reason for terminating him was pretextual.[2] (*See* Doc. No. 31 at 11 ("Unless Beard can establish Hickman

---

[2] Although Hickman County states that it "challenges the causal-connection element" of Beard's FMLA retaliation claim, (*see* Doc. No. 31 at 9), it fails to develop any supporting argument on the issue. A

3

County's reason for terminating him was pretextual, his retaliation claim must fail."); *id*. at 15 ("The overwhelming evidence is that Beard was terminated because he was unable to work, not because he was over 40 years old.")). Hickman County's foregoing arguments assume Beard can establish *prima facie* cases of FMLA retaliation and ADEA discrimination through indirect evidence,[3] and brings the Court to the second step of the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently modified in *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012); *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023); *Pelcha*, 988 F.3d at 325-26. At this second step of the *McDonnell Douglas* framework, Hickman County has the burden to "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]." *Burdine*, 450 U.S. at 255. "An articulation not admitted into evidence will not suffice." *Id*. at n.9. If the defendant meets its burden of production, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. *See id*. at 256 (citing *McDonnell Douglas*, 411 U.S., at 804–805). Here, Hickman County contends that its non-discriminatory reason for terminating Beard is that Beard "was unable to

---

party may not present a skeletal argument, leaving the court to put flesh on its bones. *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016). Thus, the Court considers this argument abandoned. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014).

[3] To make out of a *prima facie* case of FMLA retaliation through indirect evidence, a plaintiff must show: (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Render v. FCA US, LLC*, 53 F.4th 905, 920 (6th Cir. 2022). "Employers are charged with knowing about FMLA protected activity as soon as an employee requests leave, even if it turns out the employee was not entitled to benefits. It is the request that is protected activity." *Id*. To make out a *prima facie* case of discrimination under the ADEA through on indirect evidence, a plaintiff must show: (1) he is part of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment decision; and (4) he was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021).

4

work." (Doc. No. 31 at 10, 15). However, Hickman County fails to produce evidence that clearly sets forth this claimed reason for terminating Beard. As "[a]n articulation not admitted into evidence will not suffice," *see supra*, Hickman County fails to meet its burden of production. Therefore, summary judgment is inappropriate, and the Court does not reach Beard's response or pretext. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003).

**B. ADA**

"Failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person in the workplace is deemed unlawful discrimination under the ADA." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017) (citing 42 U.S.C. § 12112(b)(5)(A)). Through the pending motion, Hickman County does not dispute that Beard was disabled, otherwise qualified, or that he requested a reasonable accommodation of additional unpaid medical leave. Instead, it argues summary judgment is appropriate because granting Beard additional unpaid medical leave would have imposed an undue hardship on it. (Doc. No. 31 at 12).

"[T]he question of whether a reasonable accommodation imposes an undue burden is evaluated with regard to the employer's specific situation." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 568 (6th Cir. 2022) (citation and internal quotations omitted). In the Sixth Circuit, "[w]hen an employer believes that granting medical leave would cause undue hardship, courts first look to the employer's leave policies." *Id*. at 568. "If the employer's policies provided for the kind of leave that the plaintiff sought, courts will presume that granting the plaintiff's request would not cause undue hardship." *Id*. Here, it is undisputed that Hickman County has a "Leave Without Pay" policy that allows for absence without pay up to a year, at its discretion. (Doc. No. 37 ¶ 4). Accordingly, the Court "will presume that granting [Beard]'s request [for medical leave] would not [have] caus[ed] undue hardship [on Hickman County]." *See King*, 30

5

F.4th at 568. Moreover, Beard argues Hickman County's alleged undue hardship fails because it did not engage in the required good faith interactive process regarding accommodations. (Doc. No. 34 at 19; *see also* Doc. No. 37 ¶ 7). Viewing the facts in the light most favorable to Beard, Hickman County fails to establish the absence of material facts in dispute as to this claim.

**C. TDA**

Hickman County argues Beard's TDA claim fails as a matter of law "because Beard's disability rendered him physically incapable of performing the essential functions of his position[.]" (Doc. No. 31 at 14). Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1043 (6th Cir. 2014). Such is the case here, as Beard produces evidence showing that he could have performed the essential functions of his position. (*See* Doc. No. 34 at 17; Doc. No. 37 ¶¶ 1-3).[4] Because Hickman County fails to establish the absence of material facts in dispute as to the essential functions of Beard's position and whether he was able to perform them, summary judgment will not be granted on this claim.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Beard submits that his termination was pretext for discrimination under the TDA. (Doc. No. 34 at 20). Hickman County erroneously states that Beard abandoned his TDA claim. (Doc. No. 38 at 3).

6