IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JAMES DARRELL BEARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:22-cv-00019 |
| | ) | |
| HICKMAN COUNTY GOVERNMENT, | ) | JUDGE CAMPBELL |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Court is in receipt of the parties' filings regarding the equitable remedies of reinstatement and front pay in this matter. (*See* Doc. Nos. 108, 109, 113, 114, 117, 124). For the reasons stated herein, the Court **AWARDS** Plaintiff James Darrell Beard the remedy of reinstatement to the Sheriff's Department of Defendant Hickman County Government.

### I. INTRODUCTION

Hickman County's Sheriff's Department hired Mr. Beard in 2011. (Parties' Joint Fact Stipulations, Doc. No. 94 ¶ 1). As part of his employment, Hickman County provided Mr. Beard with health insurance, disability benefits, and contributed to his retirement with the Tennessee Consolidated Retirement System. (*Id*. ¶¶ 24-25). Mr. Beard is diabetic, and his left leg was amputated in May 2021. Hickman County terminated Mr. Beard's employment less than a month later. At the time of his termination, Mr. Beard's annual rate of pay was $44,280.00 (*Id*. ¶ 22). Mr. Beard lost his designation as Peace Officer Standards and Training ("POST") certified when Hickman County terminated his employment.

On February 28, 2025, a jury in Columbia, Tennessee found that Hickman County unlawfully terminated Mr. Beard's employment because of his disabilities and in retaliation for exercising his federally protected civil rights. (Verdict Form, Doc. No. 105).[1] The jury awarded Mr. Beard $143,387.00 in backpay and $250,000.00 in compensatory damages. On March 3, 2025, the Court entered a judgment in conformity with the jury's verdict. (Judgment, Doc. No. 107).

The Court ordered the parties to file post-trial briefs addressing the remedies of front pay and reinstatement. (*See* Doc. No. 106). Mr. Beard seeks reinstatement or, in the alternative, front pay. (Doc. No. 108). Hickman County opposes reinstating Mr. Beard because of his disabilities. (Doc. No. 109). It also opposes front pay. (*Id.*). Both parties identify POST certification as a *potential* hinderance to Mr. Beard's reinstatement as a sergeant with the Sheriff's Department.

## II.  POLICE OFFICER QUALIFICATIONS, STANDARDS, AND TRAINING

The qualifications for police officers in Tennessee are set forth in Tenn. Code Ann. § 38–8–106, which states:

> Any person employed as a full-time police officer, and any person employed or utilized as a part-time, temporary, reserve or auxiliary police officer or as a special deputy, shall:
>
> (1) Be at least eighteen (18) years of age;
>
> (2) Be a citizen of the United States, or a permanent legal resident of the United States who is an honorably discharged veteran of the United States armed forces pursuant to § 38-8-105(d);
>
> (3) Be a high school graduate or possess a high school equivalency credential approved by the state board of education;
>
> (4) Not have been convicted of or pleaded guilty to or entered a plea of nolo contendere to any felony charge or to any violation of any federal or state laws or city ordinances relating to force,

---

[1]  Hickman County did not assert the "direct threat" affirmative defense, *see* 42 U.S.C.A. § 12113(b), or any other affirmative defenses as to liability.

(4) violence, theft, dishonesty, gambling, liquor, controlled substances or controlled substance analogues;

(5) Not have been released or discharged under any other than honorable discharge from any of the armed forces of the United States;

(6) Have the person's fingerprints on file with the Tennessee bureau of investigation;

(7) Have passed a physical examination by a licensed physician or a nurse practitioner or physician assistant, so long as the task is expressly included in the written protocol developed jointly by the supervising physician and the nurse practitioner or physician assistant, whichever is applicable, setting forth the range of services that may be performed by the nurse practitioner or physician assistant;

(8) Have a good moral character as determined by a thorough investigation conducted by the employing agency; and

(9) Have been certified by a Tennessee licensed health care provider qualified in the psychiatric or psychological field as being free from any impairment, as set forth in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association at the time of the examination, that would, in the professional judgment of the examiner, affect the applicant's ability to perform an essential function of the job, with or without a reasonable accommodation.

The Tennessee Legislature established the POST Commission (referred to herein as the "POST Commission" or the "Commission"), *see* Tenn. Code Ann. § 38-8-102, "to develop, plan, and implement law enforcement training programs for local law enforcement officers in Tennessee, establish uniform standards for the employment and training of police officers, and to establish minimum standards and curriculum requirements for courses of study for training police officers." *Carter v. McWherter*, 859 S.W.2d 343, 345 (Tenn. Ct. App. 1993). Police officers in Tennessee are required to be certified by the POST Commission. *See* Tenn. Comp. R. & Regs., ch. 1110–2–.01(1) ("All persons, who are employed as full-time law enforcement officers on or after July 1, 1982,

shall comply with and maintain the pre-employment standards and meet the Basic Law Enforcement Training requirements before being certified as law enforcement officers.").

POST certification means "the designation conferred by the Commission on a person who has successfully completed a minimum, advanced, or specialized course of study and instruction required for a law enforcement officer in the State of Tennessee, and who meets all applicable requirements of T.C.A. §§ 38-8-106 and 38-8-107, and Tenn. Comp. R. & Regs. 1110-02 and 1110-03." Tenn. Comp. R. & Regs. 1110-01-.01(6); *see also* Tenn. Code Ann. § 38-8-107(a) ("The commission shall issue a certificate of compliance to any person who meets the qualifications for employment and satisfactorily completes an approved recruit training program."). An "Application for Certification" must be submitted to the POST Commission "not later than the end of the first day on which [the individual's] employment as a law enforcement officer commences." *Wright v. Tennessee Peace Officer Standards & Training Comm'n*, 277 S.W.3d 1, 3 (Tenn. Ct. App. 2008) (quoting Tenn. Comp. R. & Regs., ch. 1110–5–.01(1)).

The POST Commission is vested with authority to "establish criteria for determining whether to grant an exception to or waive the qualifications of minimum standards as provided in § 38–8–106[.]" *Id*. at 2–3. "If a waiver is granted, then a police department may employ an officer who would otherwise be in violation of § 38–8–106." *Id*. The Commission has discretion to grant a waiver of pre-employment requirements under the following circumstances:

> (a) No person in need of a waiver under this section may be employed as a law enforcement officer unless a request for a waiver has been submitted to the Commission. The waiver request will be scheduled to be considered at a Commission meeting as soon as reasonably practicable. Any person who shall appoint any applicant, who, to the knowledge of the appointee, fails to meet the minimum standards required by the Commission, and any person who signs the warrant or check for the payment of the salary of any person who, to the knowledge of the signer, fails to meet the qualifications as a law

4

enforcement officer required by the Commission, commits a Class A misdemeanor, and upon conviction will be subject to a fine not exceeding one thousand dollars ($1,000) pursuant to T.C.A. § 38-8-105.

(b) Military History. The Commission may waive pre-employment requirements relating to the military history on an individual basis and depending on the circumstances.

1. Waivers may be granted from pre-employment requirements for the following separations from military service:
    i. Entry Level Separation;
    ii. General Discharge under Honorable Conditions; or
    iii. Uncharacterized Discharge.

2. Waivers will not be granted from pre-employment requirements for the following separation from military service:
    i. Dishonorable Discharge;
    ii. Bad Conduct Discharge; or
    iii. Other Than Honorable Discharge.

(c) Criminal Activity. The Commission may waive pre-employment requirements relating to criminal activity on an individual basis and depending on the circumstances.

1. The Commission may waive pre-employment requirements for a person who has been convicted of, pleaded guilty to, or entered a plea of nolo contendere to any felony charge of any violation of federal or state laws or city ordinances relating to force, violence (excluding domestic violence), theft, dishonesty, gambling, liquor and other alcoholic beverages, or controlled substances when the offense was classified as a misdemeanor.

2. No waiver will be granted while the individual is under the jurisdiction of the court or considered on probation, whether supervised or unsupervised. For driving under the influence violations, the individual must have met all the requirements of the Tennessee Department of Safety and received a restoration of his/her permanent driving privileges under the laws of the State of Tennessee before a waiver may be considered.

3. No waiver will be granted for a narcotics violation that could result in a felony charge, a conviction for domestic violence,

5

or any offense set forth in 18 U.S.C § 922(g) that would make the possession of a firearm or weapon a prohibited act.

4. The agency sponsoring or considering employing the affected individual seeking employment or certification shall present a written request for waiver for any charges and provide a copy of the final court disposition of the case to the Commission prior to placing any applicant in a position of employment.

5. Some of the factors the Commission will consider when determining whether to grant a waiver are:

   i. The amount of time since the offense;
   ii. The amount of time since completion of the sentence;
   iii. The type, circumstances, and severity of the offense;
   iv. The applicant's activities since the offense; and
   v. The applicant's ability to carry a firearm pursuant to federal and state law.

(d) Mental Impairment. A waiver will not be granted from pre-employment requirements for a mental impairment that would affect the person's ability to perform an essential function of the job, with or without a reasonable accommodation.

(e) Education. A waiver will not be granted from pre-employment requirements relating to minimum education requirements.

(f) Previous decertification or voluntary surrender of certification as a law enforcement officer. The Commission may waive pre-employment requirements relating to previous decertification or voluntary surrender of certification as a law enforcement officer on an individual basis.

1. Some of the factors the Commission will consider when determining whether to grant a waiver are:

   i. The circumstances of the previous decertification or voluntary surrender of certification as a law enforcement officer;
   ii. The amount of time since the previous decertification or voluntary surrender of certification as a law enforcement officer;
   iii. The applicant's activities since the offense; and
   iv. The applicant's ability to carry a firearm pursuant to federal and state law.

Tenn. Comp. R. & Regs. 1110-09-.04.

### III.     STANDARD OF REVIEW

"Congress enacted the [ADA] with the noble purpose of 'provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Tucker v. Tennessee*, 539 F.3d 526, 536 (6th Cir. 2008), *abrogated on other grounds by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) (quoting 42 U.S.C. § 12101(b)(1)). To that end, the ADA incorporates the remedial provisions of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a). "Upon a finding of invidious discrimination, a district court has wide discretion to impose equitable remedies in order to 'fashion the most complete relief possible' designed to 'make the victims of unlawful discrimination whole.'" *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004) (quoting *Shore v. Federal Express Corp.*, 42 F.3d 373, 377 (6th Cir. 1994) and *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).

"A victim of discrimination 'is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.'" *United States v. City of Warren, Mich.*, 138 F.3d 1083, 1097 (6th Cir. 1998) (quoting *Albemarle*, 422 U.S. at 418–19); *Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 230 (1982) ("… the victims of job discrimination want jobs, not lawsuits."). In the Sixth Circuit, "victims of discrimination are presumptively entitled to instatement or reinstatement" and "reinstatement is the preferred equitable remedy in cases where discrimination has been proved." *Fuhr*, 364 F.3d at 761 (internal citations omitted). "The availability of reinstatement is entrusted to the sound discretion of the district court." *McGruder v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 99 F.4th 336, 343-44 (6th Cir. 2024) (citations and internal quotations omitted).

## IV. ANALYSIS

As noted above, Mr. Beard is presumptively entitled to reinstatement. And here, the Court finds that reinstatement is necessary to place Mr. Beard in, as near as may be, the situation he would have occupied if Hickman County had not unlawfully terminated his employment. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-21 (1975). Hickman County's opposition to Mr. Beard's reinstatement is not persuasive. First, Hickman County asserts that Mr. Beard is "not physically capable of performing the essential functions of a patrol deputy/sergeant." (Doc. No. 109 at 1). This argument fails as the jury necessarily rejected Hickman County's position on this key issue of fact – Mr. Beard's physical abilities to handle the job – by returning a verdict in Mr. Beard's favor on his ADA discriminatory discharge claim. (*See* Verdict Form, Doc. No. 105). Next, Hickman County asserts that Mr. Beard "is likely unable to obtain the necessary POST certification," (*see* Doc. No. 109 at 1), "due to his inability to pass the required physical examination[.]" (*Id*. at 5). Mr. Beard also has concerns that the POST Commission will not approve a pre-employment requirement waiver for him. (*See* Doc. No. 124).

Here, where discriminatory discharge and other civil rights violations have been proved, the Court finds that reinstatement is necessary to be place Mr. Beard in as near as possible the situation he would have occupied if Hickman County had not wronged him. Accordingly, the Court **AWARDS** Mr. Beard the remedy of **REINSTATEMENT** backdated to June 24, 2021, the date of his unlawful termination. As part of Mr. Beard's reinstatement, Hickman County **SHALL** expunge Mr. Beard's unlawful termination from its records, including Mr. Beard's employment file and all related documents. On or before **May 1, 2025**, Hickman County **SHALL** file under seal a copy of Mr. Beard's initial POST certification and corresponding documents, including the application it previously submitted on Mr. Beard's behalf. **By the same date**, Hickman County

shall file a notice confirming that is has expunged Mr. Beard's unlawful termination from its records, including Mr. Beard's employment file and all related documents.

The parties are advised that Mr. Beard's reinstatement is not comparable to re-hiring a former employee or hiring a new applicant; Mr. Beard is not re-applying for any position nor is he a potential job applicant. Rather, Mr. Beard is being reinstated as of the date of his unlawful termination so that he will be put back in the employment situation he would have occupied if Hickman County had not unlawfully terminated his employment in violation of his civil rights. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-21 (1975).

The Court is inclined to reinstate Mr. Beard to either: (1) his prior road deputy shift sergeant position, which requires POST certification; or (2) the jail tower operator position, which does not require POST certification. This issue is **TAKEN UNDER ADVISEMENT**, pending Hickman County's compliance with the present Order.

## V. CONCLUSION

The Court **AWARDS** Mr. Beard the equitable remedy of **REINSTATEMENT** to Hickman County's Sheriff's Department. The Court will address the details of his reinstatement by separate Order, pending Hickman County's compliance with this Order.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE